**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAIMEENA DEAN<br>4021 Ridge Avenue<br>Philadelphia, PA 19129<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN EASTERN CO., INC. d/b/a WALGREENS<br>108 Wilmont Road<br>Deerfield, IL 60015<br><br>Defendant. | CIVIL ACTION<br><br>NO.: ________________________<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Raimeena Dean (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Walgreen Eastern Co., Inc. d/b/a Walgreens (hereinafter referred to as "Defendant") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Pennsylvania Human Relations Act ("PHRA"), and Pennsylvania common law.[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. The Walgreen Eastern Co., Inc. d/b/a Walgreens is an American pharmacy store chain with retail stores in several states throughout the United States (including Pennsylvania), with headquarters at the above-captioned address.

9. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11. Plaintiff is a Black (African American) female with disabilities.

12. Plaintiff was employed by Defendant as an Emerging Store Manager ("ESM") for approximately 5 months, from on or about September 15, 2025, until her unlawful termination (discussed further *infra*) on or about February 18, 2026.

13. Plaintiff originally started working for Defendant at its Ashton, PA location for approximately one month, after which she was transferred to the Defendant's West Chester store (when their Store Manager quit), where she then trained for the next 2-3 months. Plaintiff was finally moved over to Defendant's 4098 Edgemont Avenue, Brookhaven, PA location, where she remained until her termination.

14. At the time of her termination, Plaintiff was primarily supervised by Store Manager, Zachary Tallarida (Caucasian, hereinafter "Tallarida"), and the relevant Human Resources ("HR"), Representative hereto was Sophia Lofgren (Caucasian, hereinafter "Lofgren").

15. Throughout Plaintiff's employment with Defendant, she was a hard-working employee who performed her job well.

16. However, during her tenure with Defendant, Plaintiff was subjected to disparate and discriminatory treatment as a result of her race, disabilities, and requested reasonable medical accommodations (as set forth in more detail *infra*).

**-Race Discrimination-**

17. All of the aforesaid members of management overseeing Plaintiff were Caucasian.

18. Plaintiff was the only Black manager working for Defendant at the Brookhaven, PA location, and upon her observations and belief, Defendant's work environment was disparate and unfairly harsh toward Black employees.

19. Throughout the course of her employment with Defendant, Plaintiff avers that she was subjected to race discrimination, harassment, and disparate treatment by Defendant's management and employees. For example, but not intended to be an exhaustive list, unlike her Caucasian and/or non-black co-workers:

a. Tallarida treated Plaintiff in a rude and demeaning manner, and regularly talked down to her;

b. Plaintiff was unfairly counseled and/or disciplined contrary to her Caucasian co-workers (*i.e.*, in or about January of 2026, Plaintiff counseled a Caucasian employee, Alanna Brown (hereinafter "Brown"), who was accused of being racist by a Black customer; however, Plaintiff was then pulled into the office by Tallarida the following day and admonished for merely doing her job – but Brown was not pulled into the office regarding her poor behavior);

c. Tallarida routinely referred to Plaintiff as "aggressive and hostile," thereby attempting to paint Plaintiff as the stereotypical "angry Black woman," which was completely untrue; and

d. Plaintiff was regularly berated by Tallarida for completely manufactured and/or petty reasons while other Caucasian and/or non-Black employees were permitted to insult and treat Plaintiff with hostility without redress.

20. When Plaintiff was later questioned by management about her opinion of Tallarida after a complaint was made about him by another employee, Plaintiff explicitly informed Lofgren that Tallarida unfairly treated her differently than her Caucasian counterparts because of her race, and specifically that he referred to her as “aggressive and hostile” in an effort to portray her as an “angry Black woman.”

21. Following Plaintiff’s complaints to HR regarding her race, Tallarida began to subject her to increased levels of hostility and animosity in clear retaliation, by allowing other employees to scream, yell, and ignore Plaintiff’s supervision without repercussion.

22. Plaintiff’s shift lead also began to order her around, talking to her in a derogatory way.

23. Specifically, Plaintiff’s shift lead screamed at her and followed her around the store in front of customers.

24. Tallarida effectively condoned the shift lead’s (and other employees’) hostile and aggressive behavior toward Plaintiff by failing to take any corrective action against the out of line employees and ignoring and/or blaming her for their failures and/or bad behavior.

25. Plaintiff had complained of this aggression, harassment, hostile work environment, and retaliation to Lofgren on multiple occasions leading up to her termination, but her concerns were ignored and/or not properly addressed.

**-Disability Discrimination-**

26. In addition to the discrimination, hostile work environment, and retaliation that Plaintiff was subjected to as a result of her race, Plaintiff was also treated disparately, discriminatorily, and unfairly as a result of her serious health conditions.

27. Tallarida and other employees, including another Caucasian ESM, made several derogatory comments to Plaintiff, including mockingly and disparagingly informing her that she was "too slow," in part because she moved slower than her counterparts and could not lift over 50 pounds in the totes that Defendant had full of product, because of her aforementioned health conditions.

28. Defendant's management, including but not limited to Tallarida, knew that Plaintiff suffered from several ADA-qualifying health conditions, including but not limited to back conditions (for which she had undergone prior spinal surgery in or about 2015), as well as depression and anxiety (and associated conditions/complications).

29. As a result of her aforesaid health conditions, Plaintiff sometimes suffered from pain, stiffness, mobility issues, and sleeplessness, which (at times) limited her ability to perform some daily life activities, such as climbing, lifting, carrying very heavy objects, sleeping, and working (among other daily life activities).

30. Despite Plaintiff's aforesaid health conditions and limitations, she was able to perform her job duties well; however, she (at times) required some reasonable medical accommodations.

31. For example, throughout the majority of her tenure with Defendant, she had informed Tallarida that climbing, moving, and attempting to lift the heavy totes was causing a flare-up of her aforesaid serious health conditions.

32. As a result of the aforesaid limitations, Plaintiff asked Tallarida for assistance with the physically demanding tasks that aggravated her condition (such as lifting heavy totes) while she continued performing the managerial and supervisory functions of her position. However, Tallarida ignored and/or rejected Plaintiff's very reasonable accommodation requests, instead telling her to "just do it," without engaging in any interactive process as required under the ADA.

33. Notably, the job description Plaintiff was provided at the time of her hire does not reference a physical-demand standard or lifting requirement, nor does the job description for "Emerging Store Manager" on Defendant's website.

34. Rather, the above-referenced job descriptions outline the position principally through managerial and supervisory responsibilities, including supervising employees, delegating daily activities, managing store operations, training and evaluating team members, and assisting with store planning and strategy.

35. Thereafter, in or about mid-February of 2026, Plaintiff suffered serious work-related injuries when a large heavy tote full of product (that had been precariously stacked in a tower of approximately 19 totes) fell on her.

36. Plaintiff immediately felt back, neck, and arm pain, which exacerbated her above-referenced longstanding health conditions.

37. Plaintiff informed Tallarida of her aforesaid work-related injuries/serious health conditions but had to urge him on more than once occasion to fill out an incident/accident report.

38. However, because Plaintiff was suffering from headaches and pain as a result of her work-related injuries/serious health conditions, she reached out to Defendant's third-party benefits provider, Sedgewick, to start the process of formally requesting accommodations for assistance with having to lift and with the more physically demanding jobs that Defendant required of her (including having to lift heavy totes or large water bottles at work).

39. Plaintiff further advised Sedgewick that she has suffered work-related injuries/serious health conditions that had exacerbated her longstanding disabilities and requested medical assistance.

40. Plaintiff specifically informed Tallarida that she had reached out to start the accommodation process as well, but he ignored her and began to isolate her over the next few days by not talking to her or advising other employees not to talk to her as well.

41. On or about February 17, 2026, Sedgewick informed Plaintiff in writing that it had received her accommodation request and that it was currently pending while medical information was gathered.

**-Retaliation (including Termination)-**

42. As a result of the hostility, animosity, discrimination, and disparate treatment that she was being subjected to as aforesaid, on or about February 17, 2026, Plaintiff reached out once again to Lofgren via email, stating that she was: (1) "formally raising concerns regarding harassment and retaliation contributing to a hostile work environment"; (2) had "previously engaged in protected activity by raising documented concerns through Employee Relations. Since that time, I have experienced a shift in treatment, including corrective action and additional allegations that I dispute"; (3) "a Black woman, a member of the LGBTQ+ community, and an individual with a disability," and "I am concerned that protected-class bias may be contributing to the manner in which I am being treated, addressed, and disciplined"; and (4) requesting a formal review of her prior reports, subsequent corrective action, and the handling of recent allegations.

43. However, instead of properly addressing Plaintiff's concerns of discrimination, retaliation, and a hostile work environment, Plaintiff was then abruptly terminated on or about February 18, 2026, by Tallarida and an HR representative, Nicole (last name unknown, hereinafter "Nicole") for allegedly harassing other employees, which Plaintiff denies.

44. Specifically, Defendant claimed that Plaintiff purportedly intentionally and flippantly misgendered an employee by using the wrong pronouns ***almost two weeks prior.***

45. Defendant's purported reason for Plaintiff's termination, however, is completely false and pretextual because (1) Plaintiff had proactively reached out to Tallarida specifically to clarify the employee's pronouns via text as she was "a bit confused," completely belying any allegation of "intentional" misgendering; (2) Plaintiff herself is a member of the LGBTQ+ community, and is particularly sensitive to an individual's preferred pronouns; (3) Defendant purports to have terminated Plaintiff for the two-week old misgendering allegation ***mere days*** after she suffered work-related injuries/serious health conditions and renewed requests for reasonable accommodations and ***only one day*** after her renewed complaints of discrimination, unfair treatment, a hostile work environment, and retaliation to HR.

46. Prior to her unlawful termination, Defendant failed to properly accommodate Plaintiff by failing to provide her with assistance with the physically demanding tasks Defendant was requiring that she perform (although not part of her job description) without engaging in any interactive process and/or terminating her for later formally renewing said accommodation requests through Defendant's third-party provider.

47. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of (1) her race; (2) her known and/or perceived disabilities; (3) her record of impairment; (4) her requested accommodations (discussed *supra*); (5) her expressed complaints of discrimination, hostile work environment, and retaliation; and (6) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

48. Plaintiff also believes and therefore avers that her race and disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, pretextual discipline, and a hostile work environment through disparate treatment as outlined *supra* because of her race.

51. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

52. Plaintiff was then terminated for completely pretextual reasons on or about February 18, 2026.

53. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her race and her objections to/complaints of race discrimination.

54. Plaintiff also believes and therefore avers that but for her race, she would not have been terminated from her employment by Defendant.

55. These actions as aforesaid constitute violations of Section 1981.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, pretextual discipline, and a hostile work environment through disparate treatment as outlined *supra* because of her race.

58. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

59. Plaintiff was then terminated for completely pretextual reasons on or about February 18, 2026.

60. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her race and her objections to/complaints of race discrimination.

61. Plaintiff also believes and therefore avers that her race was a motivating and/or determinative factor in the termination of her employment by Defendant.

62. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

65. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

66. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

67. Plaintiff requested reasonable accommodations from Defendant, including but not limited to, assistance with physically demanding tasks that aggravated her condition (such as lifting heavy totes) while she continued performing the managerial and supervisory functions of her position.

68. Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

69. Instead of investigating Plaintiff's aforesaid complaints of discrimination and retaliation, Defendant's management ignored them and left her legitimate concerns unresolved.

70. Plaintiff was terminated from her employment with Defendant in close proximity to her requests for/utilization of reasonable accommodations and her expressed complaints of discrimination.

71. Prior to her unlawful termination, Defendant failed to properly accommodate Plaintiff by failing to provide her with assistance with the physically demanding tasks Defendant was requiring that she perform (although not part of her job description) without engaging in any interactive process and/or terminating her for later formally renewing said accommodation requests through Defendant's third-party provider.

72. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations (discussed *supra*); (4) her

expressed complaints of discrimination, hostile work environment, and retaliation; and (5) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

73. Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

74. These actions as aforesaid constitute violations of the ADA.

**COUNT IV**
**<u>Common-Law Wrongful Discharge</u>**
**(Public Policy Violation)**

75. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76. Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for her work-related injuries (as discussed *supra*).

77. It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc*., 584 Pa. 297, 883 A.2d 511, 516 (2005).

78. The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and her termination creates an inference that her termination was in retaliation for making such claims. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: November 9, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Raimeena Dean | : | CIVIL ACTION |
| v. | : | |
| Walgreen Eastern Co., Inc. d/b/a Walgreens | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 11/9/2026 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[ X ] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

DEAN, RAIMEENA

**(b)** County of Residence of First Listed Plaintiff: Philadelphia

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**

WALGREEN EASTERN CO., INC. D/B/A WALGREENS

County of Residence of First Listed Defendant: Lake

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - mployment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

Other:
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADA (42USC12101); Section 1981 (42USC1981); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, Section 1981, Title VII, PHRA and PA Common Law.

**VII. REQUESTED IN COMPLAINT:** [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ____ DOCKET NUMBER ____

DATE 11/9/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____